PLUMROSE USA, INC., Appellant–Employer,

v.

REVIEW BOARD OF the INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT, and Joseph R. Adkins, et al., Appellees–Claimants.

No. 93A02–9411–EX–708.

Court of Appeals of Indiana.

Aug. 15, 1995.

Edward P. Benchik, Jones, Obenchain, Ford, Pankow, Lewis & Woods, South Bend, for appellant.

Pamela Carter, Attorney General, Sabra A. Weliever, Deputy Attorney General, Indianapolis, for appellees.

## OPINION

STATON, Judge.

Plumrose USA, Inc., ("Plumrose") appeals the decision of the Review Board of the Indiana Department of Workforce Development ("Board") that Joseph Adkins and seventy-five other former Plumrose employees (collectively "claimants") were eligible for unemployment benefits. Plumrose raises one issue on appeal which we restate as follows: whether the Board erred in determining that the claimants were terminated by Plumrose and eligible for unemployment benefits despite Plumrose's offer of reemployment to a portion of them.

We reverse and remand.

The facts most favorable to the judgment are as follows. Claimants, working for Plumrose, engaged in collective contract negotiations in August and September of 1993. Plumrose notified the claimants that if the union went on strike, Plumrose would hire permanent replacements. On September 8, 1993, claimants went on strike; shortly thereafter, Plumrose began hiring replacements. By January 1, 1994, Plumrose had filled all available positions with permanent replacements. At the hearing to determine eligibility for benefits on February 17, Plumrose had five vacancies, due to normal turnover, which it offered to those claimants present. Plumrose conceded, however, that it would not fire replacement workers to accommodate returning strikers.

After the hearing, the Administrative Law Judge ("ALJ") issued a decision holding that claimants' employment was terminated when the permanent replacements were hired and, thus, the claimants were eligible for benefits from that date until the date of the hearing. The ALJ also found the five positions were open because of normal turnover among the replacements. On appeal, the Board affirmed the ALJ's findings and conclusions *in toto.*

Plumrose argues that the Board erred in holding that the claimants were eligible for unemployment benefits. Plumrose asserts that, since positions remained available, the claimants were not terminated and were unemployed by choice. Accordingly, Plumrose argues, so long as one position is available from normal turnover, none of the claimants are eligible for benefits.

■ This court has exclusive, original jurisdiction over appeals from the Board to review alleged errors of law. Ind.Code § 22–4–17–12(a). On appeal, we consider only the evidence most favorable to the Board's decision and all reasonable inferences to be drawn therefrom. *Bishop v. Review Bd.* (1993), Ind.App., 611 N.E.2d 670, 672. We will affirm if there is substantial evidence of probative value supporting the Board's determination. *Id.*

We must address three questions to decide this case: (1) whether the claimants were terminated by the hiring of permanent replacements, (2) whether the availability of a small number of positions rendered the claimants ineligible for benefits as a matter of law, and (3) whether the Board entered sufficient findings to support its holding.

■ First, we ask whether Plumrose terminated the claimants by hiring permanent replacements.[1] Our review turns on an interpretation of the Indiana Employment Security Act ("Act"). The relevant section states, in part:

(a) An individual shall be ineligible for ... benefit rights for any week with respect to which his ... unemployment is due to a labor dispute at the ... premises at which he was last employed.

(b) *This section shall not apply to an individual if* he has terminated his employment, or *his employment has been terminated,* with the employer involved in the labor dispute....

1. Federal labor laws prohibit an employer from firing an employee because of a labor dispute. 29 U.S.C. § 158(a)(1), (3); *N.L.R.B. v. Champ Corp.* (1990), 9th Cir., 933 F.2d 688, 694. Obviously, then, the claimants may be terminated under the Act, while not being fired under federal labor laws.

I.C. § 22–4–15–3 (emphasis added). Under this section, the claimants are ineligible for benefits unless and until they were terminated from Plumrose's employment. *Arvin North American Automotive v. Review Bd.* (1992), Ind.App., 598 N.E.2d 532, 536, *trans. denied.*

Initially, the claimants were unemployed because of the labor dispute and, thus, were ineligible for benefits. Hiring permanent replacements, however, presupposes that the work formerly done by the claimants was no longer available. *Id,* at 537. Therefore, the Board properly held that the claimants' employment was terminated under the Act when Plumrose hired the replacements. *Id.* Later turnover and Plumrose's offer of employment does not change this conclusion as the phrase "permanent replacement" contemplates neither that the replacement eternally remain with the company nor that the claimants be permanently barred from employment therewith. *Id.; Allen v. Review Bd.* (1986), Ind.App., 494 N.E.2d 978, 980–981.

■ Next, we determine whether the availability of a small number of openings renders the claimants ineligible for benefits as a matter of law. Plumrose would have us conclude that a single opening renders all claimants ineligible regardless of Plumrose's turnover rate or the number of claimants involved. We disagree.

This court's decision in *Arvin* provides guidance.[2] In *Arvin,* Arvin I advised striking employees that ten positions were available, but replacement workers would not be displaced to make room for returning strikers. *Id,* at 538. The Board found that the open positions were *de minimis* given Arvin I's turnover and total workforce. *Id.*

■ This court affirmed, concluding that a small number of openings does not, as a matter of law, render the striking employees ineligible for benefits when the number of openings is significantly less than the employer's turnover rate. *Id,* at 539. Further, a claimant need not demonstrate that no work is available before they are eligible for

benefits. *Id.* Indeed, eligibility despite job openings is a factual determination involving the employer's turnover rate, total workforce, and available positions. *Id,* at 538–539. Thus, despite Plumrose's openings, the claimants were possibly eligible for benefits under a *de minimis* rationale.

Finally, we determine whether the Board's findings support its holding. The Board found that all positions were filled as of January 1. Two weeks thereafter, however, turnover occurred such that from January 15 up to the hearing date five positions were available. The Board, citing *Arvin,* found the claimants eligible for benefits from January 1 until the date of the hearing. In doing so, the Board emphasized that "only" five positions were available at Plumrose for the seventy-six claimants.

■ From the Board's findings and conclusion, we infer a factual finding that the five open positions were *de minimis* in relation to the size of the workforce and the turnover rate. Unfortunately, the Board failed to enter findings as to Plumrose's normal turnover rate and total workforce. Further, an examination of the record does not reveal this crucial information. The Board is required to enter specific findings on all facts relevant to the contested issues. *Ratkovich v. Review Board* (1993), Ind.App., 618 N.E.2d 44, 46–47. The Board's failure to do so compels remand as this court may not enter factual findings. *Id,* at 47; *Citizens Gas & Coke Utility v. Review Bd.* (1984), Ind.App., 471 N.E.2d 1175, 1176, *trans. denied* (findings of fact must sufficiently support judgment).

For these reasons, we reverse and remand for more specific findings relevant to the *de minimis* determination and consistent with this opinion.

SHARPNACK, C.J., concurs.

GARRARD, J., concurs and files separate opinion.

---

2. *Arvin,* a consolidation of three cases, presents multiple facts. The facts analogous to this case are those surrounding the employer denoted in *Arvin* as "Arvin I."

GARRARD, Judge, concurring.

The purpose of our Employment Security Act is to provide scheduled benefits to persons who are out of work through no fault of their own. The Act clearly intends to exclude from benefits those who are unemployed due to a labor dispute.

Such disputes are largely governed by federal law, and just as employees are permitted to strike for economic reasons (as opposed to reasons based upon the commission of unfair labor practices), employers are permitted to hire so-called "permanent replacements" for economic strikers. The point of the characterization is to denote replacements who will not themselves be replaced as soon as the strike ends and the strikers wish to return to work. For purposes of federal law a "permanently replaced" economic striker remains an employee after replacement and is entitled to reinstatement as vacancies arise unless and until the employee has obtained regular and substantial employment elsewhere. *See, e.g., Vulcan Hart Corp. v. N.L.R.B.* (8th Cir.1983) 718 F.2d 269; *N.L.R.B. v. Murray Products, Inc.* (9th Cir.1978) 584 F.2d 934.

The question before us is at what point such strikers become entitled to the benefits of the Act despite the origin of their lack of employment in a labor dispute. Were we writing upon a clean slate, I would be inclined to find such employees ineligible for benefits until the particular employee in question unconditionally sought to return to work or the strike ended, whichever first occurred. In *Arvin North American Automotive v. Review Bd.* (1992) Ind.App., 598 N.E.2d 532, *trans. denied;* however, the court held otherwise and its resolution certainly rests on a rational basis.

Accordingly, on the authority of *Arvin,* I concur.